IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MICHAEL CRAWFORD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 12 C 5289 |
| ) | |
| CITY OF CHICAGO, SERGEANT BOONE ) | Judge John Z. Lee |
| #1751, OFFICER JACKSON #6335, AND ) | |
| OFFICER JOHNSON #14318, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Michael Crawford has sued Sergeant Ricky Boone and Officers Jamesa Jackson and Courtney Johnson of the Chicago Police Department (collectively, the "Individual Defendants") for false arrest, conspiracy to falsely arrest, and failure to intervene in a false arrest in violation of his Fourth Amendment rights pursuant to 42 U.S.C. § 1983 ("section 1983"). Crawford also has filed suit against the City of Chicago in its capacity as a potential indemnitor under Illinois law.[1] Boone, Jackson, and Johnson now move for summary judgment pursuant to Federal Rule of Civil Procedure ("Rule") 56 on Counts I (false arrest), II (failure to intervene), III (conspiracy), IV (Illinois state law false arrest/imprisonment), and V (Illinois state law malicious prosecution). For the reasons provided herein, the Court grants in part and denies in part the motion.

## Factual Background

Unless otherwise noted, the following facts are undisputed. On November 30, 2011, Crawford drove his car to a location near 110th Street and Michigan Avenue in Chicago, Illinois,

---

[1] Crawford has also sued the City of Chicago for conversion under Illinois law; the City of Chicago has not moved for summary judgment as to such claim. (Compl. at ¶¶ 37-39.)

to pick up his friend, Tamila Smith ("Smith"), from her cousin's house. Defs.' Resp. Pl.'s LR 56.1(b)(3)(C) Stmt. at ¶¶ 1-2. Crawford could tell that Smith had been drinking and was intoxicated when he picked her up. *Id.* at ¶ 4. After driving around the neighborhood for some time, Crawford informed Smith that he was going to drive her home because she was not wearing a coat or shoes. Smith replied that she wanted to talk to Crawford and was not ready to go home. *Id.* at ¶¶ 6-8. When Crawford started to drive Smith home against her wishes, Smith began to kick the dashboard, at which point Crawford pulled his car over and parked on the side of the road near the intersection of 101st Street and Vincennes. *Id.* at ¶¶ 9-10. From this location, Crawford and Smith were close enough to Smith's mother's house that they could see it from the car. Pl.'s Resp. Br., Ex. 1 ("Crawford Dep.") at 44:7-18.

After Crawford stopped the car, he called Smith's mother and told her that she should come outside to get Smith from his car because Smith had been kicking his dashboard and did not want to leave on her own. *Id.* In response, Smith's mother told Crawford to put Smith on the phone so that she could talk with her daughter. But when Crawford handed Smith the phone, she threw it out of the window. *Id.* at 44:19-45:3; Defs.' Resp. Pl.'s LR 56.1(b)(3)(C) Stmt. at ¶ 12. Crawford exited his car and went outside to retrieve his phone, walked to the passenger's side of the car, and told Smith that she needed to get out of his car. Defs.' Resp. Pl.'s LR 56.1(b)(3)(C) Stmt. at ¶ 13. Smith, however, refused to exit Crawford's car. *See id.* at ¶¶ 14-16. Crawford then noticed a police vehicle driving northbound on Vincennes towards him and hailed it as he would a taxi. *Id.* at ¶ 17.

The events that followed are in dispute. According to Crawford, when Smith saw him hailing the police car, she opened the car door and jumped out, landing upright on the sidewalk roughly five feet away from Crawford. *Id.* at ¶ 18. Once Smith exited the car, Crawford closed

the passenger-side door, walked around to the driver's side, got into his car, and drove southbound on Vincennes. *Id.* at ¶ 19. Smith states that she tried to grab onto the passenger door handle of the car as Crawford drove away and stumbled backwards onto the ground when she was unable to do so. *See* Pl.'s Resp. Br., Ex. 2 ("Smith Dep.") at 24:24-25:14. Both Crawford and Smith state that Crawford never touched, pulled, or hit Smith at any point during the evening of November 30, 2011. Defs.' Resp. Pl.'s LR 56.1(b)(3)(C) Stmt. at ¶ 38.

Defendants recount a different version of the facts. Boone testified that he was driving northbound on Vincennes when he observed Crawford and Smith parked on the west side of the street. *see* Defs.' Br., Ex. C ("Boone Dep.") at 52:20-24. While driving, and from only twenty to twenty-five feet away, Boone saw Crawford pull Smith from his car and strike her to the ground with his hand. *Id.* at 53:18-54:13, 55:8-11, 56:5-19, 57:7-12, 57:17-58:2, 64:8-11, 64:16-20.

From here, the facts again are undisputed. After observing Crawford and Smith's interaction on the west side of Vincennes, Boone radioed in a "battery in progress" over dispatch and reported that the suspect was heading south on Vincennes in a vehicle. Pl.'s LR 56.1(b)(3)(A) Stmt. at ¶ 22. Boone then continued north on Vincennes, made a U-turn, and pulled up next to Smith as she stood on the west side of the road. *Id.* at ¶¶ 22, 24. Boone asked Smith whether she had just gotten out of Crawford's car. When she told him that she had, Boone asked her to get into his squad car and asked her for a description of Crawford's vehicle. *Id.* at ¶¶ 25, 28. Boone then conveyed a description of Crawford's vehicle, a 2004 silver Ford Explorer, over dispatch. *Id.* at ¶ 26; Crawford Dep. at 26:9-11; Boone Dep. at 58:10-19. Boone never asked Smith whether Crawford had hit her, and Smith states that she never told him or

3

anyone else that Crawford had. *See* Defs.' Resp. Pl.'s LR 56.1(b)(3)(C) Stmt. at ¶ 22; Smith Dep. at 39:8-40:2.

Officers Jackson and Johnson, who were nearby, heard Boone's initial dispatch call and immediately drove west on 107th Street toward Vincennes in pursuit of Crawford. *Id*. at ¶ 23. Neither Jackson nor Johnson observed the interaction between Crawford and Smith; they only learned of the incident when they heard Boone's dispatch call over the radio. *Id.* at ¶ 31.

Shortly thereafter, Boone received a message over dispatch informing him that a vehicle resembling the one that he had described in his previous message had just been stopped at 105th Street and Vincennes. *Id.* at ¶ 27. When Boone and Smith arrived at that location, they saw that Crawford had already been handcuffed and was surrounded by roughly four Chicago police officers. *Id.* at ¶ 29. At this point, Boone exited his squad car and told the police officers that the person in handcuffs, Crawford, was the suspect whom he had witnessed earlier with Smith. *Id.* at ¶ 35.

At some point while the officers were discussing Crawford's arrest, Smith was moved to Jackson and Johnson's car. *Id.* at ¶ 40. Jackson and Johnson then asked Smith where she would like to be dropped off, and she responded that she wanted to go to her cousin's house. *Id.* at ¶¶ 43-44. During the drive, the officers asked her whether she wanted to sign complaints against Crawford. She declined. *Id.* at ¶ 46. After dropping Smith off at the home of one of her relatives, Jackson and Johnson returned to the police station. Jackson and Johnson were responsible for preparing the arrest report, case report, and the complaint against Crawford. *Id.* at ¶ 50. In preparing Crawford's arrest report, Jackson relied heavily on Boone's first-hand account that he had witnessed Crawford pull Smith out of his vehicle and hit her with a closed

4

fist onto the pavement. *Id.* at ¶¶ 51, 53. Again, neither Jackson nor Johnson observed Crawford committing any crimes but relied solely on Boone's account. *Id.* at ¶ 54.

When Boone later discovered that Smith had chosen not to sign a complaint against Crawford, Boone filed a complaint himself pursuant to the Illinois Domestic Violence Act and charged Crawford with one count of domestic battery. *Id.* at ¶ 56. The charge was subsequently dropped after the prosecutor discussed the events of November 30, 2011, with Smith. *Id.* at ¶ 57.

## Discussion

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court gives "the non-moving party the benefit of conflicts in the evidence and reasonable inferences that could be drawn from it." *Grochocinski v. Mayer Brown Rowe & Maw, LLP*, 719 F.3d 785, 794 (7th Cir. 2013); *see Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 456 (1992).

### I. Boone

Defendants argue that summary judgment should be granted as to Counts I, IV, and V because: (1) Boone had sufficient probable cause to arrest Crawford; (2) Boone is entitled to qualified immunity; and (3) even if Boone lacked probable cause and is not entitled to qualified immunity, he is nonetheless entitled to partial immunity under the Illinois Domestic Violence Act. The Court addresses each argument in turn.

#### A. Probable Cause

"Probable cause to arrest is an absolute defense to any claim under Section 1983 against police officers for false arrest." *Mustafa v. City of Chi.*, 442 F.3d 544, 547 (7th Cir. 2006). Police officers have "probable cause to arrest when the facts and circumstances within their

5

knowledge and of which they have reasonably trustworthy information are sufficient to warrant a prudent person in believing that the suspect had committed or was committing an offense." *Sheik-Abdi v. McClellan*, 37 F.3d 1240, 1246 (7th Cir. 1994). "Moreover, the court's inquiry is limited to what the officer knew at the time of the arrest and not what has been gained from hindsight." *Harney v. City of Chi.*, 702 F.3d 916, 922 (7th Cir. 2012) (citing *Mucha v. Vill. of Oak Brook*, 650 F.3d 1053, 1057 (7th Cir. 2011)). "In deciding this question of law as part of a motion for summary judgment, however, we must give the non-moving party the benefit of conflicts in the evidence about what the officers actually knew at the time." *Williams v. City of Chi.*, 733 F.3d 749, 756 (7th Cir. 2013).

Here, the Court finds that there exists a genuine issue of material fact as to whether Boone reasonably believed that Crawford had committed or was committing a domestic battery when Crawford was arrested on November 30, 2011. In Illinois, "domestic battery is committed by (1) *intentionally causing bodily harm* to any family or household member, 720 ILL. COMP. STAT. 5/12–3.2(a)(1); or (2) *making physical contact* of an insulting or provoking nature with any family or household member, id. § 5/12–3.2(a)(2)." *De Leon Castellanos v. Holder*, 652 F.3d 762, 763 (7th Cir. 2011) (emphases added). Defendant Boone's version of the incident at issue is worth a closer look.

According to Boone, he was driving north on Vincennes when he witnessed Crawford's car parked on the west side of the road. Defs.' LR 56.1(a)(3) Stmt. at ¶ 18. From approximately twenty to twenty-five feet away, *see* Boone Dep. at 56:5-19, Boone witnessed Crawford physically pull Smith out of the front passenger door of Crawford's vehicle with one arm and proceeded to hit her once or twice with his other arm, forcing her to fall to the ground. Defs.' LR 56.1(a)(3) Stmt. at ¶¶ 19-20; Boone Dep. at 57:7-12, 64:8-20, 65:17-23. According to

Boone, the front passenger door of Crawford's vehicle remained ajar when Smith fell to the ground. Boone Dep. at 67:23-68:6. As Boone proceeded to pass Crawford and Smith going northbound on Vincennes, Boone saw Crawford standing outside his vehicle while Smith remained on the ground. *Id.* at 69:3-6. After witnessing this series of events, Boone immediately radioed in "[e]mergency, battery in progress, 101st and Vincennes" over the dispatch, pulled a U-turn, and picked up Smith on the west side of Vincennes. *Id.* at 73:11-14, 78:3-11, 84:7-14; Defs.' LR 56.1(a)(3) Stmt. at ¶¶ 22, 28.

For his part, Crawford acknowledges that the incident in question transpired after he and Smith had pulled over in his car onto the west side of Vincennes. Pl.'s LR 56.1(b)(3)(C) Stmt. at ¶ 10. Crawford's version of events, however, differs from Boone's in several key respects. First, while Boone states that he witnessed Crawford strike Smith to the ground, Crawford testified that he and Smith were five feet away from each other when standing on the side of the street, and both he and Smith deny that Crawford ever hit or touched Smith that evening. *Compare* Boone Dep. at 57:7-12, 64:8-20, 65:17-23, *with* Crawford Dep. at 48:22-45:2, 80:8-14, 96:18-21, *and* Smith Dep. at 17:12-15, 24:8-20. Additionally, while Boone testified that Crawford forcefully removed Smith from the passenger side of the car, Crawford claims that Smith opened the passenger door on her own accord, jumped out of the car, and ended up standing upright on the sidewalk five feet from Crawford. *See* Crawford Dep. at 48:13-49:2, 100:14-19. Further, Smith herself denies that Crawford knocked her to the ground, stating instead that she stumbled backwards when she tried to grab onto the passenger door as Crawford drove away. *See* Smith Dep. at 23:15-24:7, 25:10-14.

Needless to say, the accounts differ dramatically. "Where the material facts specifically averred by one party contradict the facts averred by a party moving for summary judgment, the

motion must be denied." *Payne v. Pauley*, 337 F.3d 767, 772 (7th Cir. 2003). Defendant's motion for summary judgment based upon the existence of probable cause is denied.

### B. Qualified Immunity

Defendants also seek summary judgment under the doctrine of qualified immunity. "The question of whether [an officer] had probable cause to arrest . . . is separate from the question relating to qualified immunity." *Fleming v. Livingston County.*, 674 F.3d 874, 879 (7th Cir. 2012). "Qualified immunity protects officers who are 'reasonable, even if mistaken' in making probable cause assessments." *Tebbens v. Mushol*, 692 F.3d 807, 820 (7th Cir. 2012) (quoting *Hunter v. Bryant*, 502 U.S. 224, 229 (1991)).

"In evaluating qualified immunity, the court asks two questions: (1) whether the facts, taken in the light most favorable to the plaintiff, make out a violation of a constitutional right, and (2) whether that constitutional right was clearly established at the time of the alleged violation." *Williams*, 733 F.3d at 758 (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). "The way that the first inquiry is phrased is reminiscent of the approach to dismissals under Federal Rule of Civil Procedure 12(b)(6) or rulings on summary judgment: the reviewing court takes the record in the light most favorable to the opponent of the motion and asks whether the case can proceed." *Jones v. Clark*, 630 F.3d 677, 680 (7th Cir. 2011).

To determine whether a right is "clearly established," "we must look at the right violated in a 'particularized' sense, rather than 'at a high level of generality.'" *Roe v. Elyea*, 631 F.3d 843, 858 (7th Cir. 2011) (quoting *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004)). In the context of a Fourth Amendment claim based on lack of probable cause, an officer is entitled to qualified immunity "when a reasonable police officer in the same circumstances . . . and possessing the same knowledge as the officer in question could have reasonably believed that probable cause

existed in light of well-established law." *Fleming*, 674 F.3d at 880 (emphasis in original) (internal quotation marks omitted). "Where there is a genuine issue of material fact surrounding the question of plaintiff's conduct, we cannot determine, as a matter of law, what predicate facts exist to decide whether or not the officer's conduct clearly violated established law." *Arnott v. Mataya*, 995 F.2d 121, 123-24 (8th Cir. 1993) (citations omitted).

Here, construing all disputed facts in Plaintiff's favor, Crawford has established a violation of his constitutional right to be free from arrest without probable cause. *See, e.g., Maxwell v. City of Indianapolis*, 998 F.2d 431, 435 (7th Cir. 1993). The adequacy of Boone's qualified immunity defense thus depends on whether "that constitutional right was clearly established at the time of the alleged violation." *See Williams*, 733 F.3d at 758. In the context of Crawford's false arrest claim, this question can appropriately be phrased as, "whether a reasonable officer could have mistakenly believed that probable cause existed." *Id.* (citing *Fleming*, 674 F.3d at 878).

Viewing these disputed facts in the light most favorable to Crawford, the Court concludes that Boone is not entitled to the defense of qualified immunity on summary judgment. For purposes of this motion, we must assume that Crawford never removed Smith from his vehicle nor touched her in any way during their interaction on Vincennes and that Crawford was in the car when Smith fell to the ground after she had unsuccessfully grabbed for the car's door handle as it drove away. Based on these facts, a reasonable jury could infer that a police officer in Boone's shoes could *not* have mistakenly believed he had probable cause to arrest Crawford for domestic battery that evening. Indeed, it is difficult to imagine how a reasonable police officer could mistake a woman jumping out of a parked vehicle on her own accord and stumbling backwards, with a man pulling her from that vehicle and striking her twice to the ground. On

9

this record, Defendant Boone is not entitled to summary judgment on the defense of qualified immunity.

### C. Partial Immunity under Illinois Law

Defendants further assert that, even if Boone had lacked probable cause to arrest Crawford and is not entitled to qualified immunity, granting summary judgment on Counts I, IV, and V as to Boone is nonetheless appropriate because he qualifies for partial immunity under section 305 of the Illinois Domestic Violence Act of 1986 ("section 305").

Section 305 states that law enforcement officials who act in good faith while enforcing the Act shall not be subject to civil liability absent willful and wanton conduct. *See* 750 Ill. Comp. Stat. 60/305. "The Illinois courts have held that a police officer is not guilty of willful or wanton conduct unless he acted with 'actual or deliberate intention to harm or with an utter indifference to or conscious disregard for the safety of others.'" *Chelios v. Heavener*, 520 F.3d 678, 693 (7th Cir. 2008) (quoting *Breck v. Cortez*, 490 N.E.2d 88, 94 (Ill. App. Ct. 1986))

Defendants argue that the summary judgment should be granted in Boone's favor as to Crawford's § 1983 false arrest claim as well as the state law false arrest and malicious prosecution claims, because the undisputed facts establish that Boone was acting in good faith when he initiated charges against Crawford pursuant to the Act. But Crawford's section 1983 claims are not precluded by section 305 of the Illinois Domestic Violence Act. *See Martinez v. Cal.*, 444 U.S. 277, 284 n. 8 (1980) ("Conduct by persons acting under color of state law which is wrongful under 42 U.S.C. § 1983 or § 1985 cannot be immunized by state law"); *see also Moore v. City of Chi. Heights*, No. 09 C 3452, 2010 WL 148623, at *2 n.2 (N.D. Ill. Jan. 12, 2010) ("Because [plaintiff] alleges a violation of federal constitutional law under § 1983, the Illinois Tort Immunity Act does not, as Defendants claim, shield their conduct.").

Of course, Section 305 arguably could apply to Crawford's false arrest and malicious prosecution claims brought under Illinois law, but genuine issues of material fact remain as to whether Boone, in fact, exercised good faith when commencing charges against Crawford. For example, assuming Crawford's version of the events to be true, a reasonable jury could conclude that Boone never saw Crawford strike Smith and that Boone's decision to pursue domestic battery charges against Crawford constituted willful and wanton conduct. For the reasons articulated above, the Court also denies Defendant's summary judgment motion as to the state law false arrest and malicious prosecution claims based on the Illinois Domestic Violence Act's partial immunity provision.

## II. Jackson and Johnson

Defendants next argue that summary judgment should be granted with regard to as to Defendants Jackson and Johnson. In support, Jackson and Johnson contend that: (1) they did not actually participate in Crawford's arrest; (2) they could safely rely on Boone's account to believe probable cause existed to arrest Crawford; and (3) they are entitled to qualified immunity. Here, the Court finds that the two officers are entitled to qualified immunity.

### A. Qualified Immunity

As mentioned, "[q]ualified immunity protects officers who are 'reasonable, even if mistaken' in making probable cause assessments." *Tebbens*, 692 F.3d at 820 (quoting *Hunter*, 502 U.S. at 229). In the context of a false arrest claim, a court shall grant summary judgment in favor of the arresting officers if it finds that "a reasonable police officer in the same circumstances and with the same knowledge . . . as the officer in question *could* have reasonably believed that probable cause existed in light of well-established law." *Williams v. Jaglowski*, 269 F.3d 778, 781 (7th Cir. 2001) (emphasis in original).

11

Separate from but related to qualified immunity, "[t]he collective knowledge doctrine permits an officer to . . . arrest a suspect at the direction of another officer . . . even if the officer himself does not have firsthand knowledge of facts that amount to the necessary level of suspicion to permit the given action." *United States v. Williams*, 627 F.3d 247, 252 (7th Cir. 2010) (citing *United States v. Hensley*, 469 U.S. 221, 232-33 (1985)). "In a civil case for an arrest without probable cause, the collective knowledge doctrine means a defendant is entitled to qualified immunity if he relied in objective good faith on another officer as to the justification for the arrest." *Graham v. Blair*, Nos. 10–cv–772–JPG–PMF, 10–cv–780–JPG–PMF, 2011 WL 6888528, at *6 (S.D. Ill. Dec. 28, 2011).

Here, Defendants argue that Jackson and Johnson are entitled to qualified immunity because they relied on Boone's first-hand account of the incident. Crawford retorts that Jackson and Johnson are not absolved from liability because they deliberately chose not to ask Crawford or Smith obvious questions that would have made it clear to them that Crawford had not committed a battery. Crawford cites to *BeVier v. Hucal*, 806 F.2d 123 (7th Cir. 1986), in support of its contention that Jackson and Johnson cannot rely on the collective knowledge doctrine.

In *BeVier*, the plaintiff-parents sued the defendant officer for arresting them for child neglect without probable cause in violation of § 1983. *See id.* at 126. The Seventh Circuit affirmed the district court's ruling in favor of plaintiffs and found that the defendant officer was not entitled to qualified immunity because he had acted unreasonably in not questioning the parents or their babysitter before he arrested the parents. *See id.* at 128-29. Crawford argues that Jackson and Johnson's qualified immunity defense is similarly deficient because they, like the defendant officer in *BeVier*, failed to question Crawford and Smith sufficiently before arresting

Crawford. *See* Pl.'s Resp. Br. at 9-11. In response, Defendants argue that the facts in *BeVier* are distinguishable from those at issue here. The Court agrees.

In contrast to the defendant officer in *BeVier*, who acted alone, here Jackson and Johnson relied on the first-hand account of Boone, who as one of their direct supervising officers. *See* Defs.' Resp. Pl.'s LR 56.1(b)(3)(C) Stmt. at ¶ 28; *see also* Pl.'s Resp. Br., Ex. 4 ("Jackson Dep.") at 37:13-16, 38:11-15. In fact, Boone specifically ordered Johnson and Jackson to place Crawford under arrest. Boone Dep. at 99:9-13, 101:20-102:2. On its facts, *BeVier* was not a collective knowledge case.

Even if the Court assumes, however, that the defendant in *BeVier* relied on the advice or orders of another officer, *BeVier* remains inapplicable. There, the Seventh Circuit held that the officer had acted unreasonably in large part because he failed to obtain any evidence that tended to prove one of the required elements of the Illinois child neglect statute. *See id.* at 126. In contrast, here, Boone informed Jackson and Johnson that he had personally witnessed Crawford remove Smith from his car and punch her to the ground, which, from Jackson and Johnson's viewpoint, would satisfy the requisite elements of Illinois battery. *See* Jackson Dep. at 109:1-9, 155:4-11; Pl.'s Resp. Br., Ex. 5 ("Johnson Dep.") at 42:2-23, 43:11-17. The Court thus finds Crawford's reliance on *BeVier* unavailing.

What is more, there is no evidence to suggest that Jackson and Johnson had reason to doubt the accuracy of Boone's dispatch or his statements to them regarding what he had witnessed. Nor is there evidence that suggests that Jackson and Johnson were unreasonable in relying on Boone's dispatch or that they acted in bad faith when they arrested Crawford. Rather, the record shows that Boone was one of their immediate supervising officers on the evening of November 30, 2011, and that Jackson and Johnson only began to pursue Crawford after they

heard Boone's dispatch call reporting a battery in progress. *See* Jackson Dep. at 37:13-16, 37:21-24, 38:11-15; Johnson Dep. at 20:4-21, 21:11-17. Plaintiff argues that Jackson and Johnson should have asked Crawford and Smith independently about the incident before effectuating the arrest, but he has provided no legal authority recognizing a duty of independent inquiry under similar factual circumstances.

Even when the facts are viewed in the light most favorable to Crawford, Jackson and Johnson did not have an obligation to take additional steps to ensure they had probable cause to arrest Crawford, nor did they have any reason to suspect that they did not have probable cause. The record shows that Jackson and Johnson acted reasonably from an objective viewpoint and in good faith reliance on Boone's dispatch in pursuing and arresting Crawford. Defendants Jackson and Johnson are therefore entitled to qualified immunity. As such, the Court grants summary judgment in favor of Defendants Jackson and Johnson as to Count I of the Complaint.

Having found that Jackson and Johnson are entitled to qualified immunity and that they did not act in bad faith in arresting Crawford, the Court grants summary judgment as to Crawford's state law false arrest claim, Count IV, as to Jackson and Johnson. Indeed, there are no facts on the record from which a reasonable jury could infer that Jackson and/or Johnson acted with malice or that their pursuit and arrest of Crawford constituted willful and wanton conduct. *See Daniels v. City of Chi.*, No. 08 C 6832, 2011 WL 887852, at *13 (N.D. Ill. Mar. 8, 2011). Jackson and Johnson are therefore entitled to partial immunity under § 305 of the Illinois Domestic Violence Act, as described above. Summary judgment on Crawford's state law malicious prosecution claim, Count V, as to Jackson and Johnson is likewise granted. *See Thayer v. Chiczewski*, 705 F.3d 237, 251 (7th Cir. 2012) (Illinois law) (plaintiff's Illinois malicious prosecution claim); *see also Aleman v. Vill. of Hanover Park*, 662 F.3d 897, 907 (7th

Cir. 2011) (Illinois law) (Illinois malicious prosecution requires "proof not only of lack of probable cause but also of 'malice'").

### III. Failure to Intervene Claim

Defendants further urge the Court to grant summary judgment in their favor on Crawford's § 1983 failure to intervene claim, Count II. Because of their different roles, the Court will address the officers separately.

#### A. Jackson and Johnson

An officer has "'an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers.'" *Randall v. Prince George's Cnty.*, 302 F.3d 188, 203 (4th Cir. 2002) (quoting *Anderson v. Branen*, 17 F.3d 552, 556 (2d Cir. 1994)). This duty attaches when the officer "observes or has reason to know that a constitutional violation is being committed and possess a realistic opportunity to intervene to prevent the harm from occurring." *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994). Additionally,

> In order for an officer to be held liable under section 1983 in cases of inaction, the plaintiff must show (1) that excessive force was being used, (2) that a citizen has been unjustifiably arrested, or (3) that any constitutional violation has been committed by a law enforcement official; and that officer had a realistic opportunity to intervene to prevent the harm from occurring.

*Id.*, 37 F.3d at 285.

Here, the Court grants Defendants' summary judgment motion on Count II of the Complaint as to Defendants Jackson and Johnson. Defendants correctly assert that officers can only be found liable for failing to intervene under § 1983 if they: "(1) had reason to know that a citizen was unjustifiably arrested, *and* (2) had a realistic opportunity to intervene to prevent that harm from occurring." *Sornberger v. City of Knoxville, Ill.*, 434 F.3d 1006, 1019 (7th Cir. 2006) (emphasis added) (citing *Yang*, 37 F.3d at 285). Here, the Court has already found based on the

15

undisputed facts that Jackson and Johnson had arguable probable cause to arrest Crawford and are entitled to qualified immunity. Accordingly, the summary judgment record fails to contain any facts from which a reasonably jury could infer that Jackson and/or Johnson had reason to know that Crawford was unjustifiably arrested and failed to intervene. *See Smith v. Daniels*, No. 01 C 4157, 2003 WL 1717635, at *7 (N.D. Ill. Mar. 28, 2003) (dismissing plaintiff's failure to intervene claim after finding that defendant officers were entitled to qualified immunity).

### B. Boone

In contrast to Defendants Jackson and Johnson, the Court denies Defendants' summary judgment motion with respect to Count II of the Complaint as to Defendant Boone. The Complaint alleges that Boone failed to intervene to prevent Crawford's false arrest. Taking as true Crawford's version of events, Jackson and Johnson were the arresting officers. The Court must also assume at this stage that Boone never saw Crawford hit Smith, but fabricated the information in his dispatch call. A reasonable jury then can conclude that, upon arriving at the scene of Crawford's arrest, Boone knew that Crawford's detention was premised upon false information and, as the supervising officer, could have prevented Crawford's arrest but failed to do so. For these reasons, the Court denies Defendants' motion with respect to Count II as it relates to Boone.

### IV. Conspiracy Claim

Finally, Defendants contend that summary judgment is appropriate with regard to Crawford's conspiracy claim, Count III, as to all Defendants. The Court agrees.

"To establish a *prima facie* case of civil conspiracy, a plaintiff must show (1) an express or implied agreement among defendants to deprive the plaintiff of his constitutional rights, and (2) actual deprivations of those rights in the form of overt acts in furtherance of the agreement."

*Thurman v. Vill. of Hazel Crest*, 570 F. Supp. 2d 1019, 1029 (N.D. Ill. 2008) (citing *Scherer v. Balkema*, 840 F.2d 437, 441 (7th Cir. 1988)). To sustain their civil conspiracy claim, the plaintiff must allege that defendants "directed themselves toward an unconstitutional action by virtue of a mutual understanding[,]" and support such allegations with facts suggesting a "'meeting of the minds.'" *Thurman*, 570 F. Supp. 2d at 1029 (quoting *Amundsen v. Chi. Park Dist.*, 218 F.3d 712, 718 (7th Cir. 2000)). As the Seventh Circuit has stated, however, "'[a] party may not cry 'conspiracy' and throw himself on the jury's mercy.'" *Kelley v. Myler*, 149 F.3d 641, 649 (7th Cir. 1998) (citing *Gramenos v. Jewel Cos., Inc.*, 797 F.2d 432, 436 (7th Cir. 1986)); *see also McAfee v. 5th Circuit Judges*, 884 F.2d 221, 222 (5th Cir. 1989), *cert. denied*, 493 U.S. 1083 ("'mere conclusory allegations of conspiracy cannot, absent reference to material facts,' state a substantial claim of federal conspiracy") (citation omitted).

Here, the summary judgment record is devoid of any facts from which a reasonable jury could infer the existence of an express or implied agreement among Boone, Jackson, and Johnson to deprive Crawford of his constitutional rights. Tellingly, Crawford does not defend his conspiracy claim in his response brief, nor does he offer any facts to support this claim. The Court thus grants Defendants' summary judgment motion on Count III of the Complaint as to all Defendants.

## Conclusion

For the reasons provided in this Memorandum Opinion and Order, the Court grants in part and denies in part Defendants' motion for summary judgment. [Dkt. 33.] The motion is granted in favor of Defendants Jackson and Johnson as to Counts I through V, and they are hereby terminated as defendants. The motion is granted in favor of the City of Chicago as to Count VII (indemnification) with regard to Defendants Jackson and Johnson. The motion is

also granted in favor of Defendant Boone as to Count III. The motion is denied as to Counts I, II, IV, and V as to Defendant Boone and Count VII as to the City's indemnification of Defendant Boone. Because the City did not move for summary judgment as to Count VI (conversion), that count also remains for trial.


SO ORDERED                    ENTER: 4/25/14

*/s/ John Z. Lee*

**JOHN Z. LEE**
**United States District Judge**